UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOSE T.,

                Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

**DECISION AND ORDER**

1:22-CV-00257 EAW

## INTRODUCTION

Represented by counsel, plaintiff Jose T. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 8; Dkt. 12). For the reasons discussed below, Plaintiff's motion (Dkt. 8) is denied and the Commissioner's motion (Dkt. 12) is granted.

## BACKGROUND

Plaintiff protectively filed his application for SSI on January 9, 2018. (Dkt. 7 at 19, 96).[1] In his application, Plaintiff alleged disability beginning June 8, 2017. (*Id.* at 19, 320).

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

Plaintiff's application was initially denied on March 23, 2018. (*Id.* at 19, 105-10). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Timothy Belford on May 19, 2021. (*Id.* at 19, 40-69). On July 20, 2021, the ALJ issued an unfavorable decision. (*Id.* at 16-39). Plaintiff requested Appeals Council review; his request was denied on March 16, 2022, making the ALJ's determination the Commissioner's final decision. (*Id.* at 7-12). This action followed.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the

- 2 -

Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. § 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*.

§ 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 416.920(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## **DISCUSSION**

### I.    **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since January 9, 2018, the application date.  (Dkt. 7 at 22).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "degenerative disc disease of the lumbar spine; posttraumatic stress disorder (PTSD); depressive disorder; and substance abuse disorder" (*Id.* at 22)  The ALJ further found that Plaintiff's obesity and alleged kidney and urinary issues were non-severe.  (*Id*.).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id.* at 22-23).  The ALJ particularly considered the criteria of Listings 1.15, 1.16, 12.04, and 12.15 in reaching his conclusion.  (*Id.* at 22-24).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. § 416.967(a), with the following additional limitations:

> [Plaintiff] can tolerate no more than occasional climbing of ramps, stairs and ladders; no more than occasional stooping, kneeling, crawling, and crouching; and no more than occasional exposure to work environments with hazards, such as unprotected heights and dangerous moving machinery. Additionally, he is limited to simple and routine tasks with no more than occasional workplace changes, occasional interaction with coworkers and supervisors, and no interaction with the public.

(*Id.* at 24-25). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 31).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of document preparer, press clipping trimmer, and address clerk. (*Id.* at 31-32). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 32).

## II.   The ALJ's Determination is Supported by Substantial Evidence and Free from Reversible Error

Plaintiff asks the Court to vacate the ALJ's decision and remand this matter to the Commissioner for immediate calculation and payment of benefits, arguing that: (1) the ALJ erred in his consideration of Plaintiff's lumbar impairments at step three; (2) the ALJ erred in relying on a stale consultative examination performed by Dr. John Schwab; (3) the ALJ erred in failing to reopen Plaintiff's prior application for SSI; (4) the ALJ failed to give adequate consideration to "voluminous physical therapy notes from Plaintiff's treatment

over the course of years in which he has reported severe pain and numbness in his leg, inability to sit or stand for more than one hour at a time"; and (5) the ALJ erred in failing to find that Plaintiff was restricted from working in high temperature environments.  (Dkt. 8-1).  The Court is not persuaded by these arguments, for the reasons discussed below.

A.     **Step Three Finding**

Plaintiff's first argument is that the ALJ erred at step three because he incorrectly referenced "Listings 1.15 and 1.16" rather than "Listing 1.04" and because he incorrectly found no evidence of a compromised nerve root.  (Dkt. 8-1 at 4-5).  As to the former point, Plaintiff is incorrect about the applicable Listing numbers.   As the Commissioner has explained in her response (*see* Dkt. 12-1 at 6), the Listings pertaining to musculoskeletal disorders were revised effective April 2, 2021, and former Listing 1.04 (Disorders of the spine) was replaced with Listing 1.15 (Disorders of the skeletal spine resulting in compromise of a nerve root(s)) and Listing 1.16 (Lumbar spinal stenosis resulting in compromise of the cauda equina).   *See* Revised Medical Criteria for Evaluating Musculoskeletal Disorders, 85 FR 78164-01, 2020 WL 7056412 (Dec. 3, 2020).  The ALJ issued his decision in this case after the effective date of these revisions and properly applied the revised Listings.

As to the latter point, "Plaintiff has the burden of proof at step three to show that [his] impairments meet or medically equal a Listing." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009), *adopted*, 614 F. Supp. 2d 252 (N.D.N.Y. 2009).  "To match an impairment in the Listings, the claimant's impairment must meet all of the specified medical criteria of a listing." *Loescher v. Berryhill*, No. 16-CV-300-FPG, 2017 WL

1433338, at *3 (W.D.N.Y. Apr. 24, 2017) (quotation and citation omitted). "If a claimant's impairment manifests only some of those criteria, no matter how severely, such impairment does not qualify." *Rockwood*, 614 F. Supp. 2d at 272 (quotations and citations omitted). An ALJ is required to provide an explanation "as to why the claimant failed to meet or equal the Listings, '[w]here the claimant's symptoms as described by the medical evidence appear to match those described in the Listings.'" *Id.* at 273 (quoting *Kuleszo v. Barnhart*, 232 F. Supp. 2d 44, 52 (W.D.N.Y. 2002) (alteration in original)); *Loescher*, 2017 WL 1433338, at *3 ("[I]t is the ALJ's responsibility . . . to build an accurate and logical bridge from the evidence to [his or her] conclusion to enable a meaningful review," and "[t]he Court cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." (internal quotation marks and citations omitted)). However, "[a]n ALJ's unexplained conclusion [at step three] . . . may be upheld where other portions of the decision and other 'clearly credible evidence' demonstrate that the conclusion is supported by substantial evidence." *Ryan v. Astrue*, 5 F. Supp. 3d 493, 507 (S.D.N.Y. 2014) (citation omitted).

Plaintiff points to an MRI from July 2, 2019, which he claims shows evidence of nerve root compromise in the lumbar spine, in contradiction to the ALJ's conclusion. (Dkt. 8-1 at 4-5). As an initial matter, contrary to Plaintiff's argument, the ALJ did not make a "blank [sic] statement that there was no evidence of [Plaintiff's] compromised nerve root[.]" (*Id*. at 4). Instead, the ALJ stated that there was no evidence of "compromise of a

nerve root <u>resulting in a radicular distribution or spinal stenosis compromising the cauda</u> <u>equina</u>."  (Dkt. 7 at 23 (emphasis added)).

Moreover, the Commissioner's regulations state that, "[w]hen a nerve root of the lumbar spine is compromised, we require a positive straight-leg raising test (also known as a Lasēgue test) in both supine and sitting positions appropriate to the specific lumbar nerve root that is compromised."  20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00F2c.  Here, as the ALJ recounted in his decision, Plaintiff had negative straight-leg raising tests.  (Dkt. 7 at 26-27).  The ALJ's conclusion that the record did not demonstrate the necessary compromise of a nerve root of the lumbar spine was supported by substantial evidence.

In any event, paragraph D of Listing 1.15 requires that a plaintiff show at least one of the following: (1) a documented medical need for a walker, bilateral canes, or bilateral crutches, or a wheeled and seated mobility device involving the use of both hands; (2) an inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements, and a documented medical need for a one-handed, hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand; or (3) an inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.15D.  The ALJ noted in his decision that Plaintiff had "full muscle strength in the bilateral upper and lower extremities" and that there was "no evidence that a physician [had] prescribed or opined that [Plaintiff] needs an assistive device for ambulation[.]"  (Dkt. 7 at 22-23).  Plaintiff has not argued or demonstrated that

these conclusions were erroneous, and has not shown that the ALJ's step three conclusion was unsupported by substantial evidence.

**B.**     **Reference to Dr. Schwab's Examination**

Plaintiff next argues that the ALJ erred in referencing a consultative examination performed by Dr. John Schwab in May of 2017, because it predated the July 2019 MRI and was "six months prior to the application which the ALJ was considering." (Dkt. 8-1 at 5). Generally, a stale medical opinion does not constitute substantial evidence that an ALJ can rely on in making a disability determination. *See Camille v. Colvin*, 104 F. Supp. 3d 329, 343-44 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016) (internal citation omitted). However, the mere passage of time does not render an opinion stale unless it fails to recognize evidence of substantial deterioration of a claimant's condition. *See Cruz v. Comm'r of Soc. Sec.*, No. 1:16-CV-00965(MAT), 2018 WL 3628253, *6 (W.D.N.Y. July 31, 2018) ("A consultative examination is not stale simply because time has passed, in the absence of evidence of a meaningful chan[ge] in the claimant's condition."); *Andrews v. Berryhill*, No. 17-CV-6368 (MAT), 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018) (finding that ALJ did not err by relying on older opinions where no evidence of significant deterioration in the plaintiff's condition was demonstrated). Accordingly, an older opinion may constitute substantial evidence if the ALJ finds it to be consistent with the record. *See Biro v. Comm'r of Soc. Sec.*, No. 6:17-CV-6098 EAW, 2018 WL 4666068, at *4 (W.D.N.Y. Sept. 28, 2018) ("[A] medical opinion is not necessarily stale simply

based on its age. A more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age.").

It was not inappropriate for the ALJ to reference Dr. Schwab's opinion because it occurred approximately eight months prior to the application date. The Commissioner's regulations provide that an SSI claimant's complete medical history must be developed for "at least the 12 months preceding the month in which" the application was filed. 20 C.F.R. § 416.912(b)(1). Moreover, Dr. Schwab's opinion was not impermissibly stale. Dr. Schwab expressly considered the results of an MRI taken in December of 2016 that showed lumbar disc desiccation at two levels of the lumbar spine. (*See* Dkt. 7 at 582). The record does not demonstrate that the July 2019 MRI showed substantial subsequent deterioration in Plaintiff's condition. The Court accordingly finds no error in the ALJ having considered Dr. Schwab's opinion while assessing Plaintiff's RFC.

### C.    <u>Failure to Reopen Prior Application</u>

Before filing the application at issue in this matter, Plaintiff had filed a prior application for benefits on January 17, 2017, which was denied on June 7, 2017. (Dkt. 7 at 89, 97-104). The ALJ determined that there was no basis to reopen the prior application, because the alleged onset date was after the prior denial date, because "[n]ew and material evidence has not been submitted and the evidence that was considered in making the determination does not clearly show on its face that an error was made," and because "the provisions of Social Security Ruling ["SSR"] 91-5p were considered and do not apply."

(*Id.* at 19-20).   Plaintiff argues that good cause was not required to reopen the prior application and that the ALJ's reliance on SSR 91-5p was "misplaced."  (Dkt. 8-1 at 5).

"[A] district court does not have jurisdiction to review the ALJ's decision not to reopen prior applications."  *Judith T. v. Kijakazi*, No. 3:22-CV-00527-TOF, 2023 WL 2706234, at *6 (D. Conn. Mar. 30, 2023); *see also Saxon v. Astrue*, 781 F. Supp. 2d 92, 99 (N.D.N.Y. 2011) ("The Commissioner's decision not to reopen a prior determination is not a final decision for the purposes of § 405(g), and thus federal courts lack jurisdiction to review the administrative decision not to reopen a previous claim for benefits.").  There are two exceptions to this rule: "(1) where the Commissioner has constructively reopened the case; and (2) where the claimant has been denied due process."  *Saxon*, 781 F. Supp. 2d at 99.  Plaintiff has not established that either of these exceptions are present here. Accordingly, the ALJ's determination not to reopen the prior application is not a basis for reversal or remand.

### D.   Consideration of Physical Therapy Records

Plaintiff's next argument is that "the ALJ did not give adequate consideration to the voluminous physical therapy notes from Plaintiff's treatment over the course of years in which he has reported severe pain and numbness in his leg, inability to sit or stand for more than one hour at a time[.]"  (Dkt. 8-1 at 5).  Plaintiff's disagreement with the ALJ's assessment of the evidence of record is not a basis to disturb the Commissioner's determination.  The ALJ reviewed and considered Plaintiff's physical therapy records in reaching his determination, noting that Plaintiff had "extensive physical therapy with minimal relief of symptom[s]," and that though he "complained of some pain and

numbness during the course of his care," he continued to "exhibit[] the full range of movement and muscle strength of the musculoskeletal system[.]" (Dkt. 7 at 26).

"[W]hether there is substantial evidence supporting [Plaintiff's] view is not the question here; rather, [the Court] must decide whether substantial evidence supports the ALJ's decision." *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013). Plaintiff's disagreement with the weight the ALJ gave his physical therapy records may establish that "reasonable minds would disagree as to whether [Plaintiff] is disabled," *id.*, but that is not a basis for reversal or remand.

### E.   Failure to Include Temperature-Based Limitation

Plaintiff's final argument is that the ALJ erred in failing to credit his testimony that he struggles in high-temperature environments "whether outside during the summer, or in a work environment," due to PTSD.  (Dkt. 8-1 at 5).  Plaintiff has not elaborated on this argument, nor offered any explanation for why he believes the ALJ was required to accept this testimony.

The ALJ carefully explained the basis for his mental RFC finding, which was based on the opinions of licensed mental health counselor Maggen Daunce and Dr. Susan Santarpia, both of which the ALJ found partially persuasive.  (Dkt. 7 at 29-30).  The ALJ further explained that Plaintiff's statements regarding the limiting effects of his mental symptoms were not fully supported by the medical evidence and clinical findings of record. (*Id*. at 27.  The Court finds no reversible error in the ALJ's consideration of the limitations associated with Plaintiff's mental impairments.

In any event, the representative occupations identified by the VE do not require exposure to extreme heat or weather.  *See Document Preparer, Microfilming*, Dictionary of Occupation Titles ("DICOT") 249.587-018  1991 WL 672349; *Cutter-and-paster, Press Clippings*, DICOT 249.587-014, 1991 WL 672348; *Addresser*, DICOT 209.587-010, 1991 WL 671797.  Accordingly, even if it was error for the ALJ to omit a temperature-related limitation from the RFC finding, that error was harmless.  *See Santos G. v. Comm'r of Soc. Sec.*, No. 1:20-CV-821-DB, 2021 WL 3861424, at *7 (W.D.N.Y. Aug. 30, 2021).

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 12) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 8) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 25, 2023
       Rochester, New York

- 13 -